**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**TASHA LEE,**

|                     |                                        |
| ------------------- | -------------------------------------- |
| **Plaintiff,**      | **CIVIL ACTION NO. 18-cv-10018**       |
| **v.**              | **DISTRICT JUDGE SEAN F. COX**         |
| **COMMISSIONER OF** | **MAGISTRATE JUDGE MONA K. MAJZOUB**   |
| **SOCIAL SECURITY,**|                                        |
| **Defendant.**      |                                        |

_____/

## REPORT AND RECOMMENDATION

Plaintiff Tasha Lee seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 10) and Defendant's Motion for Summary Judgment (docket no. 12).  The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 2.)  The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

## I.   RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 10) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 12) be **GRANTED**.

## II.     PROCEDURAL HISTORY

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on October 7, 2014, alleging that she has been disabled since October 30, 2013, due to a herniated disc in her lower back and a "[l]eft foot injury on restrictions." (TR 13, 157-58, 183.) The Social Security Administration denied Plaintiff's claim on January 30, 2015, and on February 25, 2015, Plaintiff requested a *de novo* hearing before an Administrative Law Judge (ALJ). (TR 90-101, 108-09.) Plaintiff also filed an application for supplemental security income on February 25, 2015. (Docket no. 10 at 6; TR 13.) On October 17, 2016, Plaintiff appeared with a representative and testified at a hearing before ALJ Michael R. Dunn. (TR 32-76.) The ALJ subsequently issued an unfavorable decision regarding both of Plaintiff's applications on April 4, 2017, and the Appeals Council declined to review the ALJ's decision. (TR 1-6, 13-26.) Plaintiff then commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court.

## III.     HEARING TESTIMONY AND MEDICAL EVIDENCE

Defendant (docket no. 12 at 4-10) and the ALJ (TR 17-25) have set forth detailed, factual summaries of Plaintiff's medical record and the hearing testimony. Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 30, 2013, and that Plaintiff suffered from the following severe impairments: lumbar myositis; degenerative joint disease of the left knee, left ankle, and left foot; degenerative disc disease; sciatica; obesity; obstructive sleep apnea; plantar fasciitis; status post grade II tear of the left Achilles tendon; tarsal tunnel syndrome; and chronic headaches.  (TR 15-16.)   The ALJ also found that Plaintiff's alleged anxiety and depression were non-severe impairments.  (TR 16.)  Additionally, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 16.)   The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a); pushing and pulling as much as lifting and carrying.  The work must allow for the exercise of a sit/stand option which I define as follows: there must be work that can be done in both the sitting and standing positions, such that the change in position will not cause the worker to go off task.  After sitting for 20 minutes should have the option to stand for up to 20 minutes; after standing for 20 minutes, should have the option to sit for up to 20 minutes.  The claimant can occasionally climbing [sic] ramps and stairs, one flight at a time with the use of a handrail, but can never climb ladders, and scaffolds. The work can allow for occasional balancing, stooping, kneeling, and crouching, but never crawling.  The claimant can never work at unprotected heights, must avoid hazards [sic] machinery, and never operate a motor vehicle as a job duty.  The claimant must avoid concentrated exposure to pulmonary irritants and must avoid concentrated exposure to vibration.

(TR 16-23.)   Subsequently, in reliance on the vocational expert's (VE's) testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 24-25.)   Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from October 30, 2013, through the date of the decision.  (TR 14, 25-26.)

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").  "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the

conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B.    Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

### C.    Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner]

(a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because (1) the ALJ "erred in finding that the Plaintiff's severe impairments, either singularly or in combination, failed to meet any Listing;" (2) the ALJ's assessment of Plaintiff's RFC is not supported by substantial evidence; and (3) the VE's testimony cannot serve as substantial evidence because the hypothetical questions posed to the VE did not have a proper foundation. (Docket no. 10 at 5, 6-20.)

### 1. The ALJ's Step-Three Determination

At the third step of the sequential evaluation process, a claimant will be deemed presumptively disabled and eligible for benefits if his impairment meets or medically equals one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). A claimant must satisfy all of the criteria to meet a listing, or have impairments that are medically equivalent to or equal in severity and duration to the criteria of a listed impairment. *Id.*; *Rabbers v. Comm'r,* 582 F.3d 647, 653 (6th Cir. 2009). "Moreover, all of the criteria must be met concurrently for a period of twelve continuous months." *McKeel v. Comm'r of Soc. Sec.*, No. 14-

cv-12815, 2015 WL 3932546, at *8 (E.D. Mich. June 26, 2015) (citing 20 C.F.R. § 404.1525(c)(3),

(4); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00D ("[b]ecause abnormal physical findings may be

intermittent, their presence over a period of time must be established by a record of ongoing

management and evaluation")). It is the claimant's burden to demonstrate that she meets or equals

a listed impairment at the third step of the sequential evaluation process. *Foster v. Halter*, 279

F.3d 348, 354 (6th Cir. 2001). ("A claimant must demonstrate that her impairment satisfies the

diagnostic description for the listed impairment in order to be found disabled thereunder.").

"When considering presumptive disability at Step Three, an ALJ must analyze the claimant's

impairments in relation to the Listed Impairments and give a reasoned explanation of his findings

and conclusions in order to facilitate meaningful review." *Christephore v. Comm'r of Soc. Sec.*,

No. 11-13547, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (citing *Reynolds v. Comm'r*

*of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)).

Plaintiff challenges the ALJ's determination at step three of the sequential evaluation

process that Plaintiff's impairments do not meet or medically equal Listings 1.02 and 1.04A.

(Docket no. 10 at 6-9.) Listing 1.02, Major dysfunction of a joint, is

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony
> or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of
> limitation of motion or other abnormal motion of the affected joint(s), and findings
> on appropriate medically acceptable imaging of joint space narrowing, bony
> destruction, or ankylosis of the affected joint(s). With:
>
> > A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee,
> > or ankle), resulting in inability to ambulate effectively, as defined in
> > 1.00B2b; or
> >
> > B. Involvement of one major peripheral joint in each upper extremity (i.e.,
> > shoulder, elbow, or wrist-hand), resulting in inability to perform fine and
> > gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.02. Section 1.00 defines the term "ambulate

effectively:"

(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.*, Section 1.00B2b.

Under Listing 1.04A, disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) are defined as those:

resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.04.  For a disorder of the spine to meet Listing 1.04A, "the simultaneous presence of all of the medical criteria in paragraph A must continue, or be expected to continue, for a continuous period of at least 12 months."  Social Security Acquiescence Ruling (AR) 15-1(4), 80 FR 57418-02, 2015 WL 5564523, at *57420

(Sept. 23, 2015) (citing 20 C.F.R. §§ 404.1525(c)(4), 416.925(c)(4)). Stated differently, when the paragraph A criteria "are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression would not rise to the level of severity required by listing 1.04A." *Id*.

Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (TR 16.) With regard to Listings 1.02 and 1.04, the ALJ explained:

> The claimant's arthritis fails to meet the requirements of listing section 1.02 or any other relevant listing section. The evidence does not show a gross anatomical deformity of a major peripheral joint that results in an inability to ambulate effectively or to perform fine and gross movements effectively.

> The claimant's back impairment fails to meet the requirements of listing 1.04 or any other relevant listing section because the claimant lacks the requisite motor and sensory deficits, and there is no evidence of spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication.

(TR 16.)

Plaintiff asserts that the ALJ's step-three determination is conclusory in that it lacks any analysis or citation to the medical evidence. (Docket no. 10 at 6, 8.) Plaintiff then argues that her severe left lower extremity joint impairments should be found to meet or equal Listing 1.02A because they represent major joint dysfunctions and result in her being unable to walk a block at a reasonable pace on rough or uneven surfaces or carry out routine ambulatory activities. (*Id*. at 7.) Plaintiff also argues that her back impairments satisfy the criteria for Listing 1.04A, including the requisite motor and sensory deficits. (*Id*. at 8-9.) Defendant argues that the ALJ supportably found that Plaintiff's impairments did not satisfy Listings 1.02 and 1.04 because the record did not show that Plaintiff was unable to ambulate effectively or that she had concurrent motor, sensory, and reflex loss for twelve consecutive months. (Docket no. 12 at 12-17.)

The ALJ's reasoning at step three does leave much to be desired. Nevertheless, "[t]he Sixth Circuit has expressly declined to adopt a blanket rule that remand is required whenever an ALJ 'provides minimal reasoning at step three of the five-step inquiry.'" *Wischer v. Comm'r of Soc. Sec.*, No. 1:13-cv-810, 2015 WL 518658, at *12 (S.D. Ohio Feb. 6, 2015), *report and recommendation adopted sub nom. Wischer ex rel. Ernst v. Comm'r of Soc. Sec.*, No. 1:13-cv-810, 2015 WL 1107543 (S.D. Ohio Mar. 11, 2015) (quoting *Forrest*, 591 F. App'x at 365)). In *Forrest*, the court upheld the ALJ's step-three determination, despite the fact that the ALJ's supporting analysis was sparse, because the ALJ "made sufficient factual findings elsewhere in his decision to support his conclusion at step three." *Id.*, 591 F. App'x at 366 (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) ("looking to findings elsewhere in the ALJ's decision to affirm a step-three medical equivalency determination, and finding no need to require the ALJ to 'spell out every fact a second time'") and *Burbridge v. Comm'r of Soc. Sec.*, 572 F. App'x 412, 417 (6th Cir. 2014) (Moore, J., dissenting) ("acknowledging that an ALJ's step-three analysis was 'cursory' but suggesting that, under our precedent, it is enough for the ALJ to support his findings by citing an exhibit where the *exhibit* contained substantial evidence to support his conclusion") (emphasis in original)).

Here, the ALJ discussed Plaintiff's impairments in specific enough terms later in his decision to make it clear that Plaintiff did not meet the criteria of Listings 1.02A and 1.04A. With regard to Listing 1.02A, the ALJ discussed Plaintiff's hip, knee, and ankle joints in his assessment of Plaintiff's RFC. The ALJ noted that x-rays of Plaintiff's hips performed on August 5, 2014 were normal. (TR 19.) Next, the ALJ noted that Plaintiff exhibited a slightly restricted range of motion in each knee at a January 8, 2015 exam. (TR 19-20.) The ALJ also discussed x-rays of Plaintiff's knees taken on October 28, 2015 and February 11, 2016, which confirmed degenerative

changes and osteoarthritis in the left knee, respectively.  (TR 20.)  The ALJ acknowledged Plaintiff's complaints of knee pain on April 11, 2016, but he pointed out that on examination, Plaintiff's gait and station were normal with no sensory loss.  (TR 21.)  The ALJ also acknowledged that Plaintiff continued to complain of left knee pain on July 5, 2016, but he again pointed out that on examination, Plaintiff walked into the office unassisted, her gait was normal, and she had full strength in both lower extremities.  (TR 21.)  With respect to Plaintiff's ankles, the ALJ explicitly considered the April 14, 2014 and February 10, 2015 MRIs of Plaintiff's left ankle, which confirmed myxoid degenerative changes of the Achilles tendon with a grade 2 tear anteriorly at the insertion and chronic plantar fasciitis.  (TR 18, 20.)  He pointed out a November 12, 2014 examination at which Plaintiff had a mildly antalgic gait but good movement in the left ankle.  (TR 19.)  And the ALJ noted that on December 15, 2014, Plaintiff showed no signs of atrophy in the lower extremities, had excellent range of motion in both ankle joints with +5/5 strength noted on inversion and eversion, and x-rays of the left ankle revealed no signs of arthritis. (TR 19.)  The ALJ again noted that Plaintiff had a full range of motion in both ankles at a January 8, 2015 examination and that there were no findings of joint instability or neuropathic symptoms, although Plaintiff did compensate for her foot pain with a guarded gait and associated limp.  (TR 20.)  The ALJ's discussion of this evidence supports his cursory step three analysis that Listing 1.02 was not met because "[t]he evidence does not show a gross anatomical deformity of a major peripheral joint that results in an inability to ambulate effectively."

Regarding Listing 1.04, the ALJ noted that EMG testing of the right lower limb on September 17, 2014, revealed severe right tibial sciatic neuropathy versus right S1 radiculopathy. (TR 19.)  The ALJ also noted the results of Plaintiff's September 27, 2014 MRI of the lumbar spine, which included disc bulging at L4-L5, disc protrusion at L5-S1 that abutted the traversing

right S1 nerve root, and possible effacement of the exiting right L5 nerve root at L5-S1.  (TR 19.)
The ALJ further noted that at a physical examination on January 8, 2015, Plaintiff had a full range
of motion in her cervical spine and a mildly restricted range of motion in the lumbar spine but no
neuropathic symptoms or active radicular symptoms in the back.  (TR 20.)  The ALJ also discussed
EMG testing performed on May 5, 2016, which confirmed mild lumbar radiculopathy at L5-S1
and indicated that Plaintiff had no superimposed peripheral poly-neuropathy or other mono-
neuropathies.  (TR 21.)  The ALJ's discussion of the record evidence related to Plaintiff's spinal
impairments in evaluating Plaintiff's RFC sufficiently explains and clarifies his step-three
determination that Plaintiff's impairments do not meet the criteria of Listing 1.04A because
Plaintiff lacked the requisite sensory deficits.  The ALJ's discussion is not so deficient as to
preclude meaningful review, and his step-three determination that the severity of Plaintiff's
impairments did not meet or medically equal Listings 1.02 and 1.04 is supported by substantial
evidence in the record.

Plaintiff cites a slew of record evidence in her brief to support her assertions that her
impairments meet or medically equal Listings 1.02 and 1.04.  (Docket no. 10 at 7-8.)  Essentially,
Plaintiff points to evidence in the record that could support a determination contrary to the ALJ's
and invites the court to reweigh the evidence and substitute its own judgment for that of the ALJ;
but it is not the court's role to resolve conflicts in the evidence.  *See Brainard*, 889 F.2d at 681
(citation omitted).  Nevertheless, as Defendant points out, of the more than fifty records cited by
Plaintiff, none of them, viewed singly or in combination, demonstrate that Plaintiff experienced
the simultaneous presence of all of the medical criteria in Listing 1.04A for a continuous period of
at least 12 months during the alleged disability period, as is required to meet the Listing.  (*See*
docket no. 12 at 15.)  Notably, some of the records cited by Plaintiff indicate the opposite.  For

example, at a January 29, 2015 physical therapy evaluation conducted at Great Lakes Spine Center, Plaintiff complained of radiating pain and exhibited decreased range of motion and muscle strength, but her sensation was intact.  (TR 487.)  And at a July 30, 2015 physical therapy evaluation conducted by Chris Hammer, DPT, Plaintiff again exhibited decreased range of motion and strength, but her sensation was unimpaired and her straight-leg raising tests were negative. (TR 1120-22.)  Thus, Plaintiff has failed to meet her burden of demonstrating that she meets or equals Listing 1.04.  Plaintiff's Motion should therefore be denied with regard to this issue.

> 2. *The ALJ's Assessment of Plaintiff's RFC and Hypothetical Questions to the VE*

Plaintiff argues that the ALJ's assessment of Plaintiff's RFC is not supported by substantial evidence because, although it limits Plaintiff to sedentary work, it describes an individual with an RFC greater than Plaintiff's.  (Docket no. 10 at 9-19.)  She argues that the ALJ failed to consider all of her impairments, both severe and non-severe, in assessing her RFC.  (*Id*.)  Plaintiff further argues that the RFC assessment and the corresponding questions posed to the VE do not accurately reflect all of her limitations, and without the use of proper hypothetical questions, there is no foundation for the VE's testimony regarding the availability of jobs.  (Docket no. 10 at 19-20.)

The RFC assessment is the Commissioner's ultimate finding about the claimant's ability to perform work-related activities.  Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *5. It is defined as the most, not the least, the claimant can do despite his impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a).  The ALJ derives the RFC after considering the medical and other relevant evidence in the record.  *Id*.  He must support the RFC by including a narrative discussion describing how the evidence supports his conclusions and providing citations to specific medical facts and nonmedical evidence.  SSR 96-8p, 1996 WL 374184, at *7.  In determining the RFC, the ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary setting

on a regular and continuing basis.  *Id.*  The ALJ may adopt an opinion of a medical or nonmedical

source in whole or in part if he finds that it is supported by and not inconsistent with the other

substantial evidence of record.  However, at all times the ultimate responsibility for fashioning the

RFC rests with the ALJ, who has an obligation to determine the RFC based on the evidence he

finds credible.

Plaintiff bears the burden of proving the existence and severity of limitations caused by her

impairments through step four of the sequential evaluation process.  *Jones v. Comm'r of Soc. Sec.*,

336 F.3d 469, 474 (6th Cir. 2003); *Her*, 203 F.3d at 391.  Accordingly, it is Plaintiff's burden to

prove that she has a more restrictive RFC than that assessed by the ALJ.  *See Jordan v. Comm'r

of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (citing *Her*, 203 F.3d at 392).

### a.  Mental Impairments

First, Plaintiff asserts that the ALJ failed to consider her mental impairments when

assessing her RFC.  (Docket no. 10 at 11-13.)  As Plaintiff points out, the ALJ did not find that

Plaintiff had any severe mental impairments; instead, he found that Plaintiff's anxiety and

depression were not severe:

> The claimant also testified she suffers from anxiety and depression.  However, she
> has sought little psychological treatment.  Because the claimant's medically
> determinable mental impairments cause no more than "mild" limitation in any of
> the four functional areas (understanding, remembering or applying information;
> interacting with others; concentration, persisting, or maintaining pace; adapting or
> managing  oneself),  the  mental  impairments  are  not  severe  (20  CFR
> 404.1520a(d)(1)).

(TR 16.)  While Plaintiff implies that the ALJ erred by finding that her anxiety and depression

were not severe, she does not explicitly make an argument in this regard.  Any such argument is

therefore waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation and

internal quotation marks omitted) ("[I]ssues adverted to in a perfunctory manner, unaccompanied

by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.")

Plaintiff does explicitly argue that the ALJ did not consider any mental impairments in assessing Plaintiff's RFC.  (Docket no. 10 at 11.)  To the contrary, the ALJ discussed and assessed Plaintiff's mental health records:

> Records from Taylor Psychological Services dated August 31, 2015, indicate services were discontinued after she failed to attend scheduled psychological sessions.  The social worker indicated the claimant could not demonstrate medical necessity (Exhibit B-18F, page 2).

(TR 20.)  Plaintiff argues that the ALJ "seems to suggest that the Plaintiff had improved because, 'The social worker indicated the claimant could not demonstrate medical necessity.'"  (Docket no. 10 at 12.)  Plaintiff argues that that is an inaccurate conclusion and asserts that she could not demonstrate an ongoing medical necessity because she stopped going to therapy, not because her condition had improved.  (*Id.*)  Plaintiff's argument lacks merit.  The August 31, 2015 Taylor Discharge Summary discussed by the ALJ provides:

> Reason for Termination:  Client did not return for services after her session on 7-22-15.  Cannot demonstrate medical necessity.

(TR 655.)  A comparison of the Discharge Summary and the ALJ's recitation thereof reveals that the ALJ accurately summarized the record.  The "inaccurate conclusion" that Plaintiff drew from the ALJ's summary is not properly attributable to the ALJ.

Plaintiff also argues that there is no opinion in the record regarding Plaintiff's mental impairments from a consultative examiner or a state-agency mental consultant.  (Docket no. 10 at 11.)  She argues that the only medical opinion regarding her mental impairments in the record was

issued by her treating psychologist, Heather Kirkpatrick, Ph.D., which was rejected by the ALJ.

(*Id.* at 11-12.)  Indeed, the ALJ assessed Dr. Kirkpatrick's opinion as follows:

> Health [sic] Kirkpatrick, Ph.D., a psychologist, filled out a medical assessment of ability to do work related activities on August 4, 2016, and opined she had no difficulty understanding, remember [sic] and carrying out instructions; no difficulty interacting appropriately to supervisors, co-workers and the public; however, Dr. Kirkpatrick also opined the claimant may have problems attending work due to self-reported depression, poor sleep, fatigue, and poor appetite (Exhibit B-30F).
>
> . . .
>
> . . . Since that opinion is not based on clinical findings, but rather on self reporting, and is not consistent with the evidence of record, it is accorded no weight.

(TR 21, 23.)

Plaintiff argues that the ALJ does not point to any record evidence that is inconsistent with Dr. Kirkpatrick's opinion.  (Docket no. 10 at 12.)  But the opinions of treating physicians "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994).  Dr. Kirkpatrick explicitly stated that her opinion was based on Plaintiff's self-reported depressed mood, loss of interest, poor sleep, fatigue, and poor appetite.[1]  (TR 1273.)  The ALJ therefore properly discounted Dr. Kirkpatrick's opinion based on its lack of supportability.  *See Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 391 (6th Cir. 2004) and *Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012) (upholding ALJ decisions to discount treating physicians' opinions that appeared to be based on the claimant's subjective complaints without sufficient support from objective clinical findings).  And although the ALJ did not specifically cite any record evidence with which Dr. Kirkpatrick's opinion is inconsistent, when the ALJ's

---

[1] Plaintiff argues that the ALJ should have "inquired further" of Dr. Kirkpatrick regarding the basis for her opinion. (Docket no. 10 at 13.)  Dr. Kirkpatrick, however, explicitly stated that her opinion was based on Plaintiff's subjective complaints.  There was no need for the ALJ to contact Dr. Kirkpatrick to inquire any further.

assessment of Dr. Kirkpatrick's opinion is read in conjunction with the ALJ's discussion of the records from Taylor Psychological Services and his discussion of Plaintiff's mental impairments at step two, citing "little psychological treatment," the ALJ's reasons for discounting Dr. Kirkpatrick's opinion are sufficiently specific to make clear to any subsequent reviewers the weight that he gave to Dr. Kirkpatrick's opinion.

Additionally, to the extent that Plaintiff argues that the ALJ should have ordered a consultative mental examination, Plaintiff's argument fails. An ALJ's duty to conduct a full inquiry for purposes of 20 C.F.R. § 416.1444 "does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 214 (6th Cir. 1986) (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)) (emphasis in original). Indeed, the language of § 416.1444 is discretionary and simply grants the ALJ the authority to refer a claimant to a consultative specialist if the existing medical record does not contain sufficient evidence to make a determination. *Id*. (citing 20 C.F.R. § 416.917(a)). The burden of providing a complete record, "defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Id*. (citing 20 C.F.R. §§ 416.912, 416.913(d)).

Furthermore, Plaintiff does not indicate what additional limitations the ALJ should have assessed to accommodate for her depression and anxiety in the RFC. Plaintiff has therefore failed to meet her burden of proving that her depression and anxiety require a more restrictive RFC than that assessed by the ALJ. *See Jones, Her, supra.* At most, Plaintiff leaves the ALJ and the court to speculate with regard to any possible limitations related to her mental impairments. For these reasons, the ALJ's assessment of Plaintiff's mental RFC should not be disturbed.

b.   <u>Physical Impairments</u>

Plaintiff argues that the ALJ's assessment of her physical RFC is deficient because the ALJ didn't seem to consider the cumulative effect of all of her impairments and symptoms, especially in light of her morbid obesity.  (Docket no. 10 at 13.)  The ALJ, after summarizing Plaintiff's subjective complaints and medical record, provided the following summary regarding his assessment of Plaintiff's RFC:

> The medical evidence only partially supports the claimant[s] allegations; the objective evidence does not confirm her complaints of limitations consistent with total disability.  The record supports she sustained an injury to her left foot in October 2013.  She was finally diagnosed with a torn Achilles heel (Exhibit B-2F) and she required a repair of the Achilles tendon in March 2015 (Exhibit B-17F, page 8).  Given her obesity and nature of injury and other foot pathology, she would have some degree of difficulty ambulating until she received surgical repair and recovered from that surgery.  However, the examination of Dr. Lazzara in January 2015 did not indicate severe pathology and on examination; she had full range of motion in both ankles, and walked with guarded gait with only a "mild limp" on the left side (Exhibit B-5F).  Dr. Lazzara opined she was capable of restricted light work.  The claimant did well after the ankle surgery and has had few complaints of ankle pain since then.  She has complaints of left knee pain and x-rays confirm degenerative changes (Exhibit B-33F, page 3).  However, on examination in July 2016, she walked into the office unassisted, her gait was normal with trace effusion in the left knee and full strength in both lower extremities (Exhibit B-22F, page 18-19).  She has not required surgery for the left knee.  She also has some evidence of radiculopathy in the lumbar spine (Exhibit B-24F, pages 4-5).  However, she has not required surgery or persistent treatment for her lumbar spine.  She has had only occasional complaints of headaches with several emergency room visits spread out over long periods.  However, given her history of Achilles surgery, degenerative changes in her left knee and possible radiculopathy in her lumbar spine, she is limited to sedentary work with the need for a sit/stand option, and climbing and postural restrictions.  Given her history of obstructive sleep apnea (noted in the prior decision with little recent treatment) and headaches, she requires a non-hazardous working environment with limitations as to pulmonary irritants.  Given issues of neuropathy, she requires limitations as to vibration.  The presence of obesity and its aggravating effects on the other present severe impairments has been considered and is reflected in the above residual functional capacity.

(TR 22.)

18

The ALJ also relied on the medical opinion evidence in assessing Plaintiff's RFC.  (TR 22-23.)  Specifically, the ALJ relied on the opinions of (1) the state-agency physical consultant, David Mika, DO, who opined that Plaintiff could perform a limited range of light work (TR 96-98); (2) R. Scott Lazzara, M.D., an examining source who opined that Plaintiff could stand for four hours in an eight-hour workday and occasionally stoop, push and pull in a seated position, squat, climb stairs with assistance, and carry less than 25 pounds (TR 288-96); and (3) Nathan Gross, M.D., a physical medicine and rehabilitation specialist, who evaluated Plaintiff at the request of the insurance carrier for Plaintiff's employer and opined that Plaintiff could return to work with standing and walking restrictions (TR 301-02).  The ALJ accorded partial weight to each of these opinions and found that Plaintiff's obesity and need for surgery on her Achilles tendon called for additional limitations, including sedentary work with a sit/stand option.  (TR 22-23.)

Plaintiff argues that the ALJ only limited Plaintiff's push/pull activities as to weight, but not duration or frequency.  (Docket no. 10 at 13.)  Actually, the ALJ limited Plaintiff to "sedentary work as defined in 20 CFR. 404.1567(a) and 416.967(a); pushing and pulling as much as lifting and carrying."  (TR 16.)  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. §§ 404.1567(a), 416.967(a).  The ALJ limited Plaintiff to the same frequency of pushing and pulling as lifting and carrying, which sedentary work defines as "occasional."  Thus, the ALJ limited Plaintiff to occasional pushing and pulling, and Plaintiff's argument fails in this regard.

Plaintiff also argues that the sit/stand option assessed by the ALJ is "unworkable" for someone like Plaintiff who is limited to sedentary work, because sedentary work requires no more than occasional walking or standing, which amounts to about two hours a day.  (Docket no. 10 at 15.)  Plaintiff argues that the ALJ's sit/stand option would have her standing for up to four hours

a day, which does not compute with the two hours or less generally required for sedentary work.

(*Id.*)  The ALJ's sit/stand option provides:

> The work must allow for the exercise of a sit/stand option which I define as follows: there must be work that can be done in both the sitting and standing positions, such that the change in position will not cause the worker to go off task.  After sitting for 20 minutes[,] should have the option to stand for up to 20 minutes; after standing for 20 minutes, should have the option to sit for up to 20 minutes.

(TR 16.)  As Defendant points out, the ALJ's RFC assessment requires that Plaintiff have *option* to alternate between sitting and standing every 20 minutes; it does not *require* Plaintiff to stand every other twenty minutes, or for four hours a day.  (*See* docket no. 12 at 21-22.)  Therefore, Plaintiff's argument lacks merit.

Next, Plaintiff argues that the ALJ's RFC assessment fails to account for the swelling in Plaintiff's lower extremities and Plaintiff's resulting need to elevate and ice her extremities throughout the day.  (Docket no. 10 at 15, 16.)  Plaintiff cites numerous records that document the swelling, some of which include a doctor's recommendation for rest, ice, and elevation.  (*Id.* at 15-16.)  Plaintiff acknowledges that the ALJ considered her hearing testimony regarding ice and elevation, but she argues that the ALJ failed to discuss the numerous references to Plaintiff's swollen extremities in the record or the doctor's recommendation to rest, ice, and elevate those extremities.  (*Id.* at 15.)  Plaintiff further argues that the ALJ incorrectly stated that Dr. Gross didn't find any swelling in Plaintiff's left foot, ankle, or calf during the March 26, 2014 examination.  (*Id.* at 16.)  The ALJ did indeed misstate Dr. Gross's findings regarding Plaintiff's swelling, but his error in this regard does not warrant remand, as the ALJ assessed greater limitations to Plaintiff's RFC than those assessed by Dr. Gross on March 26, 2014, despite the swelling.  Additionally, while the ALJ did not explicitly discuss each of the records cited by Plaintiff in her brief, "it is well settled that '[a]n ALJ can consider all the evidence without directly addressing in

his written decision every piece of evidence submitted by a party.'" *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir. 1999)).  Moreover, the ALJ did explicitly discuss Plaintiff's swelling in his decision (TR 18, 19), and it is evident that the ALJ considered the doctor's recommendation regarding ice and elevation, as he explicitly discussed one of the records containing that recommendation in his decision.  (TR 19 (citing TR 281).)  The ALJ adequately considered Plaintiff's swelling and asserted need for ice and elevation.

Additionally, Plaintiff argues that the ALJ mischaracterized the condition of her ankle post-Achilles tendon repair surgery.  (Docket no. 10 at 16-17.)  Specifically, Plaintiff challenges the ALJ's statement that Plaintiff "did well after the ankle surgery and has had few complaints of ankle pain since then."  (*Id.* (citing TR 22).)  According to Plaintiff, the evidence suggests that she was still experiencing significant left ankle and foot problems after the surgery.  (*Id.* at 17.)  Indeed, some of the records cited by Plaintiff demonstrate that she continued to complain of left ankle pain following her surgery.  But in the History of Present Illness section of two of those records, the doctor recorded information regarding Plaintiff's surgery and then stated, "She has some pain and some problems with stamina and standing for [a] long time but otherwise has *done quite well* with this."  (TR 867, 873 (emphasis added).)  Those records also reflect that the doctor performed foot-ankle exams with normal results.  (TR 868-69, 874-75.)  Thus, the ALJ's characterization of the condition of Plaintiff's left ankle post-surgery was not inaccurate.

Plaintiff further argues that there are many objective findings that support her symptomatic complaints that she cannot stand or walk for more than ten minutes, sit for more than 20 minutes, or kneel, squat, or crawl.  (Docket no. 10 at 14.)  She also argues that foot pedals would aggravate her lower extremity problems and that the ALJ failed to limit Plaintiff's use of foot pedals.  (*Id.* at

13, 14.)  Plaintiff argues that the ALJ also failed to limit Plaintiff's exposure to uneven surfaces and terrains.  (*Id*. at 16.)  Additionally, Plaintiff argues that although the ALJ accounted for her headaches and sleep apnea in the RFC, the ALJ should have also limited Plaintiff's exposure to light, noise, and motion, and he should have provided for the need to lie down during the headaches.  (*Id*. at 17-18.)  Plaintiff further argues that she suffers from a variety of chronic gastrointestinal problems, which, in combination with her headaches, sleep apnea, back pain, left knee pain, ankle pain, foot pain, neuropathy, radiculopathy, depression, and anxiety, cause her to be off task, and the ALJ should have included such a limitation in the RFC.  (*Id*. at 18-19.)

Plaintiff, however, has not cited any medical opinion evidence to support these additional limitations.  Plaintiff cites her subjective complaints, but the ALJ is not required to accept those complaints, and he did not do so here.  *See Jones*, 336 F.3d at 476.  As noted above, the ALJ found that the objective evidence did not confirm Plaintiff's complaints of limitations consistent with total disability.  (TR 22.)  To the extent that Plaintiff cites objective evidence in support of the alleged limitations, she essentially invites the court to reweigh the evidence and substitute its own judgment for that of the ALJ.  Again, it is not the court's role to resolve conflicts in the evidence. *See Brainard, supra*.  And while Plaintiff is able to marshal evidence that supports her position, she is not entitled to remand simply because she can point to evidence in the record that might support a different conclusion than was reached by the ALJ.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Indeed, the evidence cited by Plaintiff does tend to support Plaintiff's assertions, but nothing in Plaintiff's argument gives the undersigned a basis for recommending that the ALJ's well-reasoned opinion be rejected, as there is also substantial evidence supporting the ALJ's decision.  At most, Plaintiff has shown that the ALJ's decision falls within the ALJ's zone of choice, where, if the ALJ's decision is supported by substantial evidence, it must be

affirmed, even if substantial evidence also supports the opposite conclusion. *See Her*, 203 F.3d at 389-90; *Mullen*, 800 F.2d at 545 (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

The ALJ weighed the medical and non-medical evidence in conjunction with Plaintiff's subjective complaints and developed an RFC based on the evidence that he found to be consistent with and supported by the record. The ALJ then included all of the limitations of the RFC in his hypothetical questions to the VE, and the VE testified that there were jobs available for a person with those limitations, which the VE cited in detail. (TR 68-70.) The ALJ then properly relied on the VE's testimony to determine that there are significant numbers of jobs available that Plaintiff can perform. The ALJ's RFC assessment and decision at step five of the sequential evaluation process are based on substantial evidence, and they should not be disturbed.

## VI.     CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 10) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 12).

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with

specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 15, 2019              s/ Mona K. Majzoub
                                     MONA K. MAJZOUB
                                     UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: January 15, 2019              s/ Leanne Hosking
                                     Case Manager